UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 3:22-cr-24 |
| v. | Judges Crytzer/Guyton |
| Victor Btesh<br>Michelle's DVD Funhouse, Inc.<br>  *d/b/a "The Amazing Express"*<br>MJR Prime, LLC<br>  *d/b/a "Ready 2 Go"*<br>Prime Brooklyn, LLC<br>  *d/b/a "Super Super Fast"* | |
| Defendants. | |

## UNITED STATES' COMBINED SENTENCING MEMORANDUM

The United States, through the undersigned, hereby files its combined sentencing

memorandum for defendants Victor Btesh; Michelle's DVD Funhouse, Inc. ("MDF"); MJR

Prime, LLC ("MJR"); and Prime Brooklyn, LLC ("PB"). The United States requests that this

Court: (1) adopt the sentencing guidelines calculations recommended by the Probation Office,

including a four-level adjustment based on defendant Btesh's role as an organizer and leader of

the criminal conspiracy charged in this case; (2) order defendant Btesh to serve a term of

incarceration within the advisory guidelines range as calculated by the Court; (3) order defendant

Btesh to pay a criminal fine within the advisory guidelines range payable in full within 15 days

of the judgment; (4) order defendant Btesh to pay the special assessment of $100; (5) order

MDF, MJR, and PB to each pay a criminal fine jointly recommended by the parties of,

respectively, **$174,000**, **$138,000**, and **$68,000**, subject to an owner-offset pursuant to U.S.S.G.

§ 8C3.4 resulting from the individual fine imposed on Victor Btesh, in six equal installments; (6)

order MDF, MJR, and PB to each pay a $400 special assessment; and (7) not order restitution as

to any defendant, consistent with the parties' joint recommendation. The facts of this case are not

sufficiently unique to warrant a variance from the guidelines range.

## I. FACTUAL BACKGROUND

### A. Summary of the Offense

For at least three years, Victor Btesh participated in, and eventually led an expansion of, a conspiracy that robbed countless DVD and Blu-Ray Disc purchasers of the benefits of open and fair price competition. Outwardly, defendant Btesh, his three companies MDF, MJR, and PB (collectively, the "Corporate Defendants"), and other conspirators appeared to participate in a vibrant marketplace in which sellers vigorously competed for sales, and in which sellers priced their products independently and dynamically. In reality, however, the competition was illusory and the conspirators chose to instead exploit a more lucrative, hidden, and criminal alternative: reaching illegal agreements with one another to fix prices at supra-competitive levels to increase their profits. That is wrong. That is illegal. And that is why defendant Btesh and the Corporate Defendants are being sentenced today.

### B. Overview of the Conspiracy and Industry Background

DVDs and Blu-Ray Discs are forms of optical disc storage that are sold on the Amazon Marketplace platform. The Amazon Marketplace platform is an e-commerce platform owned and operated by Amazon.com, Inc. ("Amazon") in the United States that enables third-party vendors to create and manage virtual storefronts in which they may list their products and pricing in order to compete with one another and, at times, with Amazon for the sale of new or used products to customers on Amazon's website. The Amazon Marketplace platform is itself a component of the Amazon.com website. Defendant Btesh and the Corporate Defendants have each pleaded guilty to one count of violating 15 U.S.C. § 1 by knowingly entering into and engaging in a combination and conspiracy to suppress and eliminate competition by fixing prices of video

2

media contained on DVDs and Blu-Ray Discs sold through the Amazon Marketplace platform to customers located throughout the United States. [*See* Doc. 72 ("MDF Plea Agreement"); Doc. 74 ("MJR Plea Agreement"); Doc. 70 ("PB Plea Agreement").] The combination and conspiracy engaged in by these defendants and their coconspirators was an unreasonable restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

The conspiracy began in at least October 2016 and continued until at least October 29, 2019 (the "relevant period"). [Doc 68 ("Btesh Plea Agreement") ¶ 4(a); MDF Plea Agreement ¶ 5(a); MJR Plea Agreement ¶ 5(a); PB Plea Agreement ¶ 5(a).] During the relevant period, defendant Btesh and the Corporate Defendants operated out of Brooklyn, New York. Acts in furtherance of the conspiracy were carried out within the Eastern District of Tennessee, including multiple instances in which the defendants, while located outside of the Eastern District of Tennessee, agreed with a conspirator operating a storefront in Sweetwater, Tennessee to raise prices on DVDs and Blu-Ray Discs in furtherance of the conspiracy. [Btesh Plea Agreement ¶¶ 4(a), (d); MDF Plea Agreement ¶¶ 5(a), (e); MJR Plea Agreement ¶¶ 5(a), (e); PB Plea Agreement ¶¶ 5(a), (e).]

During the relevant period, defendant Btesh owned and operated MDF, MJR, and PB, through which defendant Btesh and the Corporate Defendants held themselves out as competitors in the Amazon Marketplace platform with other storefronts, and at times with Amazon itself, for sales to customers of DVDs and Blu-Ray Discs. Btesh operated the associated Amazon Marketplace storefronts on behalf of the Corporate Defendants from Brooklyn, New York. Through MDF, Btesh employed two subordinates. [*See* Doc. 98 ("Btesh PSR") ¶ 24.] Defendant Btesh also enlisted the aid of at least three other members of his family as well. Collectively, the two employees and three other family members assisted defendant Btesh in operating and

3

maintaining his Amazon storefronts, as well as implementing and initiating the agreed-upon fixed prices for particular DVDs or Blu-Ray Discs. [*See* Btesh PSR ¶ 24]; *see also* **Sealed Appendix 7**.

In approximately October 2016, Victor Btesh and the Corporate Defendants entered into the charged conspiracy when they began working with other conspirators to fix prices. The coconspirators ultimately included, among others: Bruce Fish, BDF Enterprises, Inc., David Camp, Morris Sutton, Raymond Nouvahian, and Emmanuel Hourizadeh. Specifically, defendant Btesh (on behalf of himself and the Corporate Defendants) began sending and receiving emails in furtherance of their price-fixing objectives with their conspirators on a routine basis, and defendant Btesh and his conspirators agreed to adjust—and did adjust—their pricing in accordance with such emails. The price-fixing e-mails conform to a recurring pattern: one co-conspirator e-mails other co-conspirators with explicit references to a fixed floor price that the recipient should target for a specific DVD or Blu-Ray Disc identified by title or by Amazon Standard Identification Number (ASIN). [*See., e.g.*, Btesh PSR ¶ 18.] Often, a co-conspirator would respond to such a request with "Ok," "done," or other words of agreement regarding raising prices on certain items. [*Id.*] At other times, co-conspirators would simply adjust the price and not respond. [*Id.*]

During the relevant period, defendant Btesh sent or received hundreds, if not thousands, of emails where he engaged in price fixing discussions about select DVDs and Blu-Ray Discs sold on the Amazon Marketplace platform. [*Id.* ¶ 25.] Defendant Btesh's voluminous price-fixing efforts affected $1,900,000 in DVDs and Blu-Ray Discs sold by defendant Btesh's three Corporate Defendants in the Amazon Marketplace over the course of his and the Corporate Defendants' involvement in the conspiracy, of which $870,000 was attributable to MDF [Doc.

4

100 ("MDF PSR") ¶ 18], $690,000 to MJR [Doc. 101 ("MJR PSR") ¶ 18], and $340,000 to PB [Doc. 103 ("PB PSR") ¶18.]

## II.    GUIDELINES RANGES

The United States concurs with the sentencing guidelines calculation provided by probation for Btesh and the Corporate Defendants [Btesh PSR ¶¶ 33-42; MDF PSR ¶ 48; MJR PSR ¶ 48; PB PSR ¶ 48] which are summarized as follows:

**Victor Btesh's Guideline Calculation**

| Description | U.S.S.G. § | Sentencing Calculation |
|---|---|---|
| Base Offense Level | 2R1.1(a) | 12 |
| Volume of Commerce (VOC) Adjustment for VOC between $1 million and $10 million | 2R1.1(b)(2)(A) | +2 |
| *Aggravating Factors* | | |
| Role Enhancement: Aggravating Role for Leader/Organizer | 3B1.1 | +4 |
| *Downward Adjustments* | | |
| Acceptance of Responsibility | 3E1.1(a) | -2 |
| Timely Notice of Intent to Plea | 3E1.1(b) | -1 |
| ***Total Offense Level*** | | 15 |
| Guidelines Months of Imprisonment Range, Criminal History Category I | 18-24 months | |
| Individual Fine Range (1-5% of Volume of Commerce), per U.S.S.G. 2R1.1(c) | $20,000-$95,000 | |

No mandatory minimum sentence applies, and the maximum term of imprisonment is 10 years. [Btesh PSR ¶ 59.] The guidelines range for supervised release is one to three years. [*Id.* ¶ 64.] The maximum term of supervised release is three years. [*Id.* ¶ 65.]

5

**Michelle's DVD Funhouse, Inc. Guidelines Calculation**

| Description | U.S.S.G. § | Sentencing Calculation |
|---|---|---|
| Base Fine | 8C2.4 | $174,000 |
| Base Culpability Score | 8C2.5(a) | 5 |
| Number of Employees | 8C2.5(b) < 10 | 0 |
| Acceptance of Responsibility | 8C2.5(g)(d) | -1 |
| Minimum and Maximum Multipliers | 8C2.6 | 0.8x – 1.6x |
| Total Fine Range (with $174,000 as the jointly recommended fine prior to any offset) | 2R1.1(d)(1) | $139,200 – $278,400 |

Any fine for MDF may be subject to a recommended owner-offset pursuant to U.S.S.G.

§ 8C3.4 resulting from the individual fine imposed on Victor Btesh.

**MJR Prime, LLC's Guidelines Calculation**

| Description | U.S.S.G. § | Sentencing Calculation |
|---|---|---|
| Base Fine | 8C2.4 | $138,000 |
| Base Culpability Score | 8C2.5(a) | 5 |
| Number of Employees | 8C2.5(b) < 10 | 0 |
| Acceptance of Responsibility | 8C2.5(g)(d) | -1 |
| Minimum and Maximum Multipliers | 8C2.6 | 0.8x – 1.6x |
| Total Fine Range (with $138,000 as the jointly recommended fine prior to any offset) | 2R1.1(d)(1) | $110,400 – $220,800 |

Any fine for MJR may be subject to a recommended owner-offset pursuant to U.S.S.G.

§ 8C3.4 resulting from the individual fine imposed on Victor Btesh.

**Prime Brooklyn, LLC's Guidelines Calculation**

| Description | U.S.S.G. § | Sentencing Calculation |
|---|---|---|
| Base Fine | 8C2.4 | $68,000 |
| Base Culpability Score | 8C2.5(a) | 5 |
| Number of Employees | 8C2.5(b) < 10 | 0 |
| Acceptance of Responsibility | 8C2.5(g)(d) | -1 |
| Minimum and Maximum Multipliers | 8C2.6 | 0.8x – 1.6x |
| Total Fine Range (with $68,000 as the jointly recommended fine prior to any offset) | 2R1.1(d)(1) | $54,400 – $108,800 |

Any fine for PB may be subject to a recommended owner-offset pursuant to U.S.S.G. § 8C3.4 resulting from the individual fine imposed on Victor Btesh.

### III.    DEFENDANT BTESH'S ROLE IN THE OFFENSE

In determining the applicable offense level, the United States and defendant Btesh agree with the conclusions reached in his amended Presentence Investigation Report on all relevant sentencing guidelines terms with one exception: defendant Btesh's role in the offense. For the reasons stated below and in the Btesh PSR, the United States agrees with probation that defendant Btesh was a leader or organizer of the conspiracy. Thus, a four-level adjustment pursuant to U.S.S.G. § 3B1.1(a) is warranted in this case.

Under U.S.S.G. § 3B1.1(a), a defendant's offense level is increased by four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Application Note 4 to U.S.S.G. § 3B1.1 sets forth a list of factors the Court should consider in determining whether a defendant had a leadership or organizational role in the criminal activity. These factors include: (1) the exercise of decision-making authority; (2) the nature of participation in the criminal offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share in the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others.

As a threshold matter, during the pendency of the conspiracy there were five or more participants, including at least the six individuals who have pleaded guilty in this Court. [*See*

Btesh PSR ¶ 24.] Moreover, defendant Btesh clearly satisfies most, if not all, of the factors set forth in Application Note 4.[1]

According to the interview report of one coconspirator, "Btesh was essentially the ring leader who said he could get title prices higher." **Sealed Appendix 1** (describing Sealed Exhibit 1). Although such a declaration is not dispositive, the facts support the coconspirator's assessment.

As detailed below, defendant Btesh sought to price-fix wherever possible, and thus held a broad view of the conspiracy's scope. Any DVD or Blu Ray Disc offered for sale on the Amazon Marketplace by conspirators, with sales fulfilled by Amazon, could be viable targets for collusion. The only limits were the time and effort necessary to identify viable target products and the ability to persuade the competitors on that product to collude. On those fronts, defendant Btesh went to extraordinary lengths to maximize the conspiracy's reach. Indeed, defendant Btesh's coconspirators expressed surprise that defendant Btesh was singularly responsible for so much price-fixing correspondence, inclusive of a near continuous monitoring of the Amazon Marketplace pricing to identify and pursue opportunities to collude. *See* **Sealed Appendix 2** (coconspirators describing the "minute-by-minute" attention Btesh dedicated to the conspiracy, and that defendant Btesh's conspiratorial conduct was so extensive that it was commensurate

---

[1] In his objections to the Btesh PSR, defendant Btesh has not disputed the majority of facts cited in the PSR that qualify defendant Btesh for the leader/organizer role enhancement. Instead, he focuses his objections on the conduct of others. But others' conduct does not preclude a finding that defendant Btesh's own conduct qualifies him for the leader/organizer enhancement. More than one person may qualify as an organizer or leader of a criminal activity. *United States v. Sadler*, 750 F.3d 584, 594 (6th Cir. 2014).

8

with what one might expect if defendant Btesh had been outsourcing price tracking for the conspiracy to foreign laborers abroad).

Conspirators indicated that defendant Btesh, more than any other, dedicated himself fully to effectuating the conspiracy. Indeed, they consistently expressed that defendant Btesh became the most prolific participant as measured by his involvement in the hundreds, if not thousands, of price-fixing emails. *See* **Sealed Appendix 3** (coconspirators detailing the volume and frequency of defendant Btesh's price-fixing request emails).

Defendant Btesh's leadership role extended beyond identifying price-fixing opportunities and asking his conspirators to agree to fix prices. When other sellers appeared in the Amazon Marketplace and competed for sales of products he sold, he personally researched the identity of, and approached, their storefront operators to directly recruit them into the conspiracy. [Btesh PSR ¶¶ 26-27] (recognizing defendant Btesh's recruitment of a number of coconspirators); *see also* **Sealed Appendix 4** (conspirators detailing how defendant Btesh first approached them).

Furthermore, defendant Btesh used his extensive contacts in the industry to help coconspirators contact non-conspirators for recruitment purposes and to strengthen the ties between coconspirators by introducing them to one another. [Btesh PSR ¶ 27]; *see also* **Sealed Appendix 5** (conspirators indicating the importance of defendant Btesh sharing his contacts in allowing the conspiracy to grow; conspirators describing how defendant Btesh effectively commercialized the price-fixing scheme; Btesh introducing conspirators to one another and describing how to communicate price-fix requests).

Defendant Btesh took numerous steps to ensure the conspiracy was continuous and successful. For example, he frequently acted as a middleman between conspirators when conflicts arose by passing on complaints conspirators made about one another to their intended

targets, and he tried to improve the price-fixing compliance of those subject to the complaints. *See* **Sealed Appendix 6**. He also promised to monitor the performance of a hesitant coconspirator's price-fixed products to ensure that the conspirator's pricing of affected products would remain viable even after the price was fixed. *See* **Sealed Appendix 6** (conspirators describing some of defendant Btesh's efforts to keep coconspirators engaged).

In addition to controlling his two employee subordinates as they acquired products, implemented price-fixes, and moved price-fixed DVDs and Blu-Ray Discs in the Amazon Marketplace, he also directed three other family members as they furthered the conspiracy's goals. This included, for example, telling coconspirators and his family members that they were to work together to implement price fixes. *See* **Sealed Appendix 7** (providing examples of defendant Btesh's five employees and family members participating in the scheme). *See United States v. Anthony*, 280 F.3d 694, 698 (6th Cir. 2002) (noting that participants are those who aid in the conduct with knowledge of the criminal activity). Also, as the sole or majority owner of not one but three colluding storefronts (all pleaded co-defendants in this matter), defendant Btesh stood to receive a disproportionate share of the crime's fruits—especially as compared to those subordinates and family members who worked for, or contributed to, the Corporate Defendants. [*See* Btesh PSR ¶ 26.]

Furthermore, defendant Btesh sought to control the actions of others in his network by relentlessly hounding them to fix their prices. After co-conspirators (and defendants) Hourizadeh and Nouvahian communicated to defendant Btesh and other conspirators in March 2019 that they would no longer participate in further price collusion with defendant Btesh, for example, defendant Btesh did an end-run around them and continued to collude with their subordinate employee without their knowledge. *See* **Sealed Appendix 8** (conspirators detailing defendant

10

Btesh's relentlessness and his refusal to accept their disassociation with him by circumventing their directive).

In sum, it is difficult to overstate the nature and degree of defendant Btesh's participation in the charged offense because he bears significant responsibility for the coordination, growth, and maintenance of the successful and prolonged criminal conspiracy that victimized thousands of consumers nationwide and affected millions of dollars in commerce. Even if he had not been the one to conceive of the scheme, defendant Btesh's central position in the planning, organizing, and nurturing of the scheme culminated in its rapid growth, increased scope, and success.

For the foregoing reasons, the United States submits that a four-level leader/organizer enhancement under U.S.S.G. § 3B1.1(a) is appropriate in this case.

## IV.    SENTENCING RECOMMENDATION

<u>Victor Btesh</u>

**Incarceration and Criminal Fine.** A within-guidelines sentence of incarceration and a within-guidelines criminal fine is appropriate in this case. The sentence in this case should promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes by the defendant, *see* 18 U.S.C. § 3553(a)(2)(A)-(C), which is achieved by a within-guidelines sentence. Because the guidelines range falls within Zone D of the Sentencing Table, the guidelines call for a term of imprisonment. *See* U.S.S.G. § 5C1.1(f); *see also* U.S.S.G. § 2R1.1 app. nt. 5 ("It is the intent of the Commission that alternatives such as community confinement not be used to avoid imprisonment of antitrust offenders.") Finally, based on the information presently available to the United States Probation Office, defendant Btesh appears to have the ability to pay a fine within the individual fine guidelines range of $20,000 to $95,000. [Btesh PSR ¶ 58.]

11

**Supervised release**. The Court should impose at least one year of supervised release, [Btesh PSR ¶¶ 64-65], that includes the mandatory, standard, and proposed special conditions outlined in Btesh PSR ¶¶ 69-70.

**Restitution**. Restitution may be ordered in this case, but restitution is not required as it is discretionary for the offense charged. The parties have agreed to recommend to the Court that Defendant's sentence not include an order of restitution because of the civil remedies available to the victims of this violation. [Btesh PSR ¶¶ 75-76 (citing 18 U.S.C. § 3663(a)(1)(A) and U.S.S.G. § 5E1.1).]

<u>The Corporate Defendants: MDF, MJR, and PB</u>

The parties have jointly stipulated to recommend a fine of $174,000 for MDF [MDF PSR ¶ 8], $138,000 for MJR [MJR PSR ¶ 8], and $68,000 for PB [PB PSR ¶ 8], payable as one-sixth of the total due in six annual installments. Each of these fines is a within-guidelines sentence and is appropriate in this case. Each may additionally be further offset pursuant to U.S.S.G. § 8C3.4 as a result of any fine imposed in the sentence of defendant Btesh individually.

As with defendant Btesh's individual sentence, the sentence for the Corporate Defendants should promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and to protect the public from further crimes by the defendant. 18 U.S.C. § 3553(a)(2)(A)-(C). In this case, these aims are achieved by the recommended criminal fine amounts, which are each within-guidelines, and which the parties believe to be reasonable. [*See* MDF PSR ¶¶ 8, 51; MJR PSR ¶¶ 8, 51; PB PSR ¶¶ 8, 51.] *See generally* U.S.S.G. § 8C3.8 (Determining the Fine Within the Range – Policy Statement).

**Restitution**. Restitution may be ordered in this case, but restitution is not required as it is discretionary for the offense charged. The parties have agreed to recommend to the Court that the

Btesh Entity defendants' sentences not include an order of restitution because of the civil remedies available to the victims of this violation. [MDF PSR ¶ 8; MJR PSR ¶ 8; PB PSR ¶ 8.]

**Probation**. Probation is required to be ordered in this case if the fine is to be paid in installments. U.S.S.G § 8D1.1(a)(2).

**For the United States**

 

 

 

 FRANCIS M. HAMILTON III
United States Attorney

 

 

_July 3, 2023_____
DATE

    _____
ROBERT M. JACOBS, IL Bar No. 6289819
KEVIN C. CULUM, MT Bar No. 3460
ELIZABETH K. NOONAN-POMADA,
IL Bar No. 6327383
NICKOLAS R. FORAN, NE Bar No. 27156
Antitrust Division
U.S. Department of Justice
Chicago Office
209 S. LaSalle St., Ste 600
Chicago, IL 60604
Tel: 312-984-7200
Robert.Jacobs@usdoj.gov

 

WILLIAM A. ROACH, JR., TN Bar No. 028349
Assistant United States Attorney
Eastern District of Tennessee

13